UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Asher Worldwide Enterprises LLC, d/b/a, Reliabuy.com, | ) ) ) | No. 12 C 568 |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Thomas M. Durkin |
| Housewaresonly.com Incorporated, Stuart N. Rubin, and Marcia Rubin, | ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Asher Worldwide Enterprises, LLC ("AWE") brings this suit against Defendants Housewaresonly.com Incorporated ("Housewaresonly.com"), Stuart Rubin, and Marcia Rubin. The amended complaint sets forth a claim for relief against all three defendants for copyright infringement under 17 U.S.C. § 501 *et. seq.* ("Count I"), and violations of the Lanham Act, 15 U.S.C. § 1125(a)(1) ("Count II"). R. 35, Am. Compl. ¶¶ 26-31. The individual defendants Stuart and Marcia Rubin ("the Rubins") move to dismiss Counts I and II against them. R. 57. For the following reasons, the Rubins' motion to dismiss is denied.

**Background**

The following relevant facts, drawn from AWE's amended complaint, are accepted as true, and all reasonable inferences are drawn in its favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Additionally, relevant facts drawn from AWE's opposition brief to the Rubins' motion to dismiss are considered

1

insofar as they are consistent with the amended complaint. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing cases). AWE is a corporate business that sells discount commercial kitchen and restaurant equipment through a website called "Reliabuy.com." R. 35 ¶¶ 1, 11, 12. Defendants Stuart and Marcia Rubin are the president and registered agent, respectively, of Housewaresonly.com and RestaurantKitchenWarehouse.com, businesses that make available for purchase various restaurant, kitchen, and other appliances through their websites and are direct competitors of AWE and its Reliabuy.com site. *Id.* at ¶¶ 14, 15, 17, 19. According to AWE, the Rubins "direct and control" the operations of Housewaresonly.com and are the only people associated with the business. *Id.* at ¶ 19; R. 65 at 4-5.

While operating Reliabuy.com, AWE and others acting on its behalf created descriptions, product feature listings, and promotions to appear on the website and accompany the products listed for sale. R. 35 ¶ 13. AWE applied for copyright registration for those descriptions, feature listings, and promotions with the United States Copyright Office.[1] *Id.* at ¶ 14. Between October 29, 2009 and January 27, 2010, AWE published 65 original product listings with descriptions on Reliabuy.com. *Id.* at ¶ 23. And between March 17, 2010 and July 17, 2010, 47 of

---

[1] AWE attached copies of these applications to its amended complaint. R. 35-2. *See Geinosky*, 675 F.3d at 745 n. 1 (in ruling on motion to dismiss, district court can consider complaint, documents attached to complaint, and documents critical to complaint and referred to in it).

those 65 descriptions were published on the Housewaresonly.com's website.[2] *Id.* On August 11, 2010, AWE published 25 more descriptions on its website, and all of those descriptions were copied onto Housewaresonly.com's website on September 22, 2010. *Id.* In September and October of 2010, AWE further published 139 additional descriptions, and by October 22, 2010, Housewaresonly.com copied and published 75 of those 139 descriptions on its website.[3] *Id.* At no time did AWE give permission to the defendants to use the descriptions. Additionally, consumer Internet searches for "Reliabuy" display Housewaresonly.com pages and links. *Id.* at ¶ 22.

In September 2010, AWE redesigned its website to focus on discount commercial restaurant equipment. *Id.* at ¶ 25. On September 22, 2010, shortly after AWE made this switch, Housewaresonly.com registered a new website called "RestaurantKitchenWarehouse.com" that focused on the same area of equipment. *Id.* That new website included over 200 product descriptions created, owned, and published by AWE. *Id.*

On July 15, 2011, AWE filed this federal action in the United States District Court for the Western District of Washington against Sur La Table, Inc., Housewaresonly.com, and RestaurantKitchenWarehouse.com, alleging, among

---

[2] AWE attached over 20 instances of descriptions being duplicated on Housewaresonly.com's website to its amended complaint. R. 35.

[3] In its amended complaint, AWE further alleges that "another" 1,000 product listings were listed on AWE's website from October 2008 to October 2009, and over 150 of those descriptions were copied onto Housewaresonly.com's website between March 17, 2010 and July 17, 2010. R. 35 ¶ 23. This allegation is confusing given AWE's earlier statements.

other things, copyright infringement and violations of the Lanham Act. R. 1. After AWE voluntarily dismissed defendant Sur La Table, Inc. from the lawsuit on July 27, 2011, R. 4, the district court concluded that it did not have personal jurisdiction over the remaining defendants and accordingly, venue was not proper in the Western District of Washington, R. 14. On January 10, 2012, the case was transferred to this district. *Id.* Upon receiving the case, on May 22, 2012, the Court referred the case to Magistrate Judge Valdez for settlement purposes. R. 24 (Dow, J.). AWE alleges that during this time, instead of engaging in settlement discussions, the Rubins were "winding up the affairs of Housewaresonly.com and moving themselves away from Chicago." R. 65 at 3. AWE further alleges that the Rubins had in fact "abandoned their websites and appear[ed] to be depleting the assets, if any, of the websites in an attempt to avoid financial liability for the actions complained of in this case." *Id.* In response to these actions, on September 10, 2012, AWE moved to amend its complaint, seeking to add the Rubins personally as named defendants, R. 30, a request that this Court granted, R. 34 (Dow. J.).

After the amended complaint was filed, AWE attempted to serve the Rubins but encountered difficulty. AWE alleges that it attempted to serve them at the address listed as Housewaresonly.com's corporate headquarters, but discovered that the address was for a UPS facility in Wilmette, Illinois and no one at the facility had information regarding the Rubins' whereabouts. R. 65 at 3-4. AWE served interrogatories asking for the Rubins' current address. Counsel for the corporate defendants initially responded that the Rubins current address was "unknown"—

4

the Rubins had apparently moved leaving no forwarding address—but later agreed to accept service of the complaint on their behalf. *Id.* at 4. Counsel for Housewaresonly.com then filed an appearance on the Rubins' behalf. R. 47, 48.

## Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (internal quotation marks omitted). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## Analysis

In their motion to dismiss, the Rubins challenge the sufficiency of the allegations in AWE's amended complaint to hold them liable in their individual capacities. The Rubins argue that AWE's allegations fall short of the "special showing" required to hold them personally liable for the infringement of the corporation. According to the Rubins, AWE's statements in its amended complaint that they directed and controlled the operations of the corporation, as their alter egos, are conclusory and insufficient to survive a Rule 12(b)(6) motion to dismiss. R. 57 at 4.

Long ago, the Seventh Circuit discussed when corporate officers may be held personally liable for patent infringement by their corporation:

> [I]n the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction . . . . It is when the officer acts willfully and knowingly—that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability—that officers are held jointly with the company.

*Dangler v. Imperial Mach., Co.*, 11 F.2d 945, 947 (7th Cir. 1926).[4] Courts continue to apply this standard to personal liability for all types of corporate intellectual

---

[4] Despite its age, *Dangler* remains the seminal case that establishes the standard for when corporate officers may be held personally liable for intellectual property

property infringement. *See Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 994 (7th Cir. 2004); *FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, No. 07 C 1794, 2007 WL 4335264, at *4 (N.D. Ill. Dec. 5, 2007). Thus, for personal liability for corporate intellectual property infringement to extend to corporate officers, a special showing must be made that they acted willfully and knowingly and personally participated in the infringing activities or used the corporation to carry out their own deliberate infringement. *Id.*; *see also FM Indus.*, 2007 WL 4335264, at *4. Merely being an officer in the corporation will not confer liability on an individual. *DEV Indus., Inc. v. Rockwell Graphic Sys., Inc.*, No. 91 C 7197, 1992 WL 100908, at *3 (N.D. Ill. May 4, 1992). When corporate officers are in control of the decisions of the corporation at all times, however, they may be liable for the intellectual property infringements of the corporation. *Weller Mfg. Co. v. Wen Products, Inc.*, 231 F.2d 795, 801 (7th Cir. 1956); *see also Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 994 (7th Cir. 2004); *C.S.B. Commodities, Inc., v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 857-60 (N.D. Ill. 2009).

AWE contends that the following factual allegations in its amended complaint are sufficient to support its claims against the Rubins personally: (1) "Mr. and Ms. Rubin have, without the authorization or permission of AWE, copied and duplicated many of the descriptions"; (2) "Mr. Rubin and Ms. Rubin direct and

---

infringement by their corporation. Although *Dangler* involved patent infringement, its standard has also been applied to trademark and copyright infringement. *See Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 994 (7th Cir. 2004); *FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, No. 07 C 1794, 2007 WL 4335264, at *4 (N.D. Ill. Dec. 5, 2007).

control the operations of Defendants Housewaresonly.com, and RestaurantKitchenWarehouse.com"; and (3) "Defendant Housewaresonly.com is the alter ego[ ] of Defendants Mr. Rubin and Ms. Rubin and is under the direct control of Mr. Rubin and Ms. Rubin." R. 35 ¶¶ 16, 19, 20. Whether these allegations alone are sufficient to reveal personal participation and direction and survive a 12(b)(6) motion is a close question. The Rubins' argument that AWE's allegations about them personally are conclusory is well-taken. The complaint, however, includes additional factual allegations that Stuart Rubin was the owner and president of the corporations, and Marcia Rubin was the registered agent for the corporations. Plus, the sheer number of infringements alleged, over 300,[5] leads to the reasonable and credible inference that the Rubins acted willfully and knowingly when they duplicated the product descriptions.

Ultimately, the Court need not rely solely on the allegations in the amended complaint to resolve this dispute. AWE adds further elaboration to the factual allegations in its amended complaint in its brief opposing dismissal, which this Court may consider in deciding a Rule 12(b)(6) motion to dismiss provided they are "consistent with the pleadings." *Geinosky*, 675 F.3d at 745 n.1 (citing cases). AWE reiterated in its brief that Stuart and Marcia Rubin are the only two individuals associated with the corporations. R. 65 at 4. AWE's brief also points to the following

---

[5]    This number includes the 47 product descriptions uploaded onto the Housewaresonly.com website between March 17, 2010 and July 17, 2010; the 25 descriptions uploaded on September 22, 2010; and the 75 descriptions uploaded on October 22, 2010. R. 35 ¶ 23. This number also includes the over 200 product descriptions copied onto the RestaurantKitchenWarehouse.com website. *Id.* ¶ 25.

8

facts (and reasonable inferences from those facts) that AWE contends supports its claim that the Rubins were personally involved in the corporation's infringements: (1) the structure of the corporations, which included only the Rubins as being associated with the them; (2) the Rubins' listing of a UPS store facility as the corporate headquarters; (3) the Rubins' suspicious attempts during the litigation to avoid service; and (4) the fact that the websites were abandoned, the assets withdrawn, and the corporation dissolved at the same time that the Rubins moved (to an unknown address) in an attempt to delay the federal case. *Id.* at 6. According to these allegations, the Rubins were not only the heads of the corporations, but they also comprised its entire workforce, which leads to the reasonable inference that they were personally involved in the corporation's infringements. The timing of the corporations' shutdown also lends further support to the claim that the corporation's conduct was fully under the control of the Rubins. Essentially, given the structure of the corporations, it is reasonable to infer that the infringement actions of the corporations were committed by the Rubins because they are in fact "the corporation." Moreover, the suspicious nature of the timing and attempts to avoid service in connection with the federal suit leads to the inference that the Rubins knowingly and willfully participated in the infringements and were shutting down the corporations to avoid personal liability. Ultimately, when all these facts are taken together, along with the sheer number of infringements alleged, the claim that the Rubins were personally involved in the infringements and that the

corporation was their alter ego, allowing them to conduct their own infringements and shield them from liability, is at least plausible.

After viewing the allegations in the amended complaint and AWE's opposition brief in the light most favorable to AWE, the Court finds that AWE has made at this stage a "special showing" that the Rubins personally participated in the corporation's infringement. It is at least plausible, taking all the allegations as true, that the Rubins "use[d] the corporation as an instrument to carry out [their] own willful and deliberate infringements" and "knowingly use[d] an irresponsible corporation with the purpose of avoiding personal liability." *Dangler*, 11 F.2d at 947. Accordingly, AWE has sufficiently alleged a level of personal participation in the allegedly infringing activities to survive the Rubins' 12(b)(6) motion.[6]

---

[6] It would be an inefficient use of the parties' resources to grant the Rubins' motion to dismiss without prejudice and allow AWE leave to amend its complaint again to include the additional allegations included in its opposition brief. As demonstrated above, the Court has already found the allegations in the complaint and the further elaborations in AWE's opposition brief together are sufficient to survive the Rubins' 12(b)(6) motion to dismiss. AWE could therefore cure the defects in its complaint if it were granted leave to amend it. Through AWE's opposition brief, the Rubins are on notice of the allegations against them and may proceed with discovery accordingly.

## Conclusion

For the foregoing reasons, the Rubins' motion to dismiss Counts I and II in AWE's amended complaint is denied.

ENTERED:

_Thomas M. Durkin_
Thomas M. Durkin
United States District Judge

Dated: August 26, 2013